■ In the Matter of AMERADA HESS CORPORATION, Appellant, v VIN-CENT DI GUILIO, Respondent.—Appeal from a judgment of the County Court of Saratoga County, entered January 23, 1976, which dismissed an application in a proceeding pursuant to article 7 of the Real Property Actions and Proceedings Law, for eviction. On August 1, 1969 the parties entered into a dealer franchise and sale agreement and a lease of a gasoline station owned by the Amerada Hess Corporation (Hess) located in Mechanicville, New York. The lease was to run from August 19, 1969 to September 30, 1969 and thence from month to month. The lease provided that either party could terminate the lease, "by giving at least (30) thirty days' written notice to the other party before the end of the initial term hereof, or before the end of any subsequent monthly term". The parties continued under these terms until September 25, 1975 when Hess sent a letter to respondent terminating the franchise and sale agreement and advising that the lease would termi-nate on November 30, 1975. When respondent refused to vacate, Hess commenced an eviction proceeding. The respondent by way of an affirmative defense alleged that Hess had failed to comply with section 199-c of the General Business Law. The trial court agreed and dismissed the petition. The sole issue raised on this appeal is the applicability of the provisions of article 11-B of the General Business Law to the lease of August 1, 1969 as negotiated by the parties. The applicable provisions of the General Business Law, which became effective October 1, 1975, are as follows: Section 199-c: "3. No distributor may terminate, cancel or refuse to renew a franchise agreement for any reason unless he has given ninety days' written notice to the dealer of his intent to terminate, cancel or not renew such franchise". Section 199-f: "This act *[sic]* shall not apply to a franchise granted prior to the effective date of this article *provided that a renewal or extension of such a franchise shall not be excluded from the application of this article.*" (Emphasis supplied.) Since neither party denies that the subject lease, by its own terms, became a month to month tenancy on October 1, 1969 and, further, that either party could terminate the same by 30 days written notice, the only question is whether the notice of termination by Hess, dated September 25, 1975, effectively ended the lease as of that date, or, since the date of actual removal of the lessee from the premises was not to occur until November 30, 1975, the notice amounted to a renewal of the monthly tenancy on both October 1 and November 1, 1975 and thereby invoked the exclusionary provision of section 199-b of the General Business Law. The answer to the question lies in a comprehension of the nature of a periodic tenancy. It has been long embedded in the common law that a month to month tenancy is a single, continuous tenancy with each successive period "'a springing interest arising upon the *first contract,* and *parcel of it'*" *(Pugsley v Aikin,* 11 NY 494, 496) and statutory recognition of this common-law principle can be found in both the Estates, Powers and Trusts Law (EPTL 6-1.1) and the Real Property Law (Real Property Law, § 232-b). Consequently, given the lack of a dispute that the subject lease created a month to month tenancy, it necessarily follows that each successive period springs from the original term and is not a "renewal" of the lease within

the meaning of section 199-f of the General Business Law *(Puglsey v Aikin, supra)*. It follows, therefore, that Hess' notice of September 25, 1975 was issued six days before the effective date of article 11-B on October 1, 1975. The provisions of that article are inapplicable to the facts herein. Judgment reversed, on the law and the facts, without costs. Koreman, P. J., Sweeney, Kane, Mahoney and Herlihy, JJ., concur.